27 C.C.P.A. (Patents)

**In re SABOL.**

**Patent Appeal No. 4277.**

Court of Customs and Patent Appeals.
April 8, 1940.

John E. Jackson, of Pittsburgh, Pa (Charles B. Spencer, of Pittsburgh, Pa., and Edward W. Shepard, of Washington, D. C., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellant made application in the United States Patent Office for patent for "Stud Terminal Rail Bonds." All the claims, four in number, were rejected by the examiner for lack of patentability in view of the prior art cited, and upon appeal to the Board of Appeals that tribunal affirmed the examiner's decision. Appellant then appealed to this court.

Claims 1, 2, and 3 are directed to structure; claim 4 to method. They read:

"1. A rail bond terminal having a stud adapted to fit a rail recess and a head from which said stud extends and in which a tapered depression is formed extending inwardly from its side opposite said stud toward the latter but terminating within said head at a location spaced from said stud, the latter and said head being integral and solid excepting for said depression in said head.

"2. A rail bond terminal having a stud adapted to fit a rail recess and a head from which said stud extends and in which a tapered depression is formed extending inwardly from its side opposite said stud toward the latter but terminating within said head at a location spaced from said stud, the latter and said head being integral and solid excepting for said depression in said head, said depression being axially aligned with said stud and having a blunt bottom so that the metal from said head between said bottom and said stud may be forged into the latter by a suitable blunt-nosed tool so as to effect expansion of said stud.

"3. The combination of a railroad rail in which a recess is formed and a rail bond terminal having a stud fitting said recess and

with a head outside of the latter, said head and stud being integral and said stud being solid and having a portion of the metal of said head forged centrally into the same, whereby said stud is expanded in said recess.

"4. A method of fixing the stud of a stud-type rail bond metal terminal in a rail recess when the stud is solid and integral with the head, including forging some of the metal of said head centrally into said stud so as to expand the latter."

Four patents were cited as references, to wit:

Badt et al., 826,136, July 17, 1906;
Deems, 1,945,480, January 30, 1934;
Deems, 2,045,126, June 23, 1936;
Everett, 2,074,379, March 23, 1937.

The device is designed for bonding, or coupling together, adjacent ends of railroad rails for the transmission of signal energy. The coupling means comprises a flexible conductor which has headed studs on each end thereof. The heads and studs are integral, the stud portion being solid. The studs are designed to be inserted in recesses in the rails. In the head of each stud there is formed a tapered depression which extends inwardly from the outer side of the head toward, but not into, the stud portion. It is observed, however, that claims 3 and 4, supra, do not define the depression in the head. The purpose of the depression so described is to receive a tapered tool which, when struck, forces the metal of the stud into intimate contact with the walls and bottom of the recess in the rail, or, as expressed in claim 2, supra, expansion of the stud is effected. This effect is also referred to as "forging" and as causing "flow" of the metal of the stud portion.

The two Deems patents and the patent to Everett show couplers which, in general conformation, resemble the device of appellant, but in each of these the recess corresponding to what is described in appellant's device as a depression in the head extends entirely through the head and into the stud itself.

Of the Badt et al. patent the examiner said: "The Badt et al. patent shows a rail bond in which the heads are expanded or forced against depressions which extend through the web of the rail. The depressions are tapered when the heads are finally secured in position. It should be noted that some of the metal is forged centrally. * * *"

The examiner rejected claims 1 and 2 as being unpatentable over either of the Deems patents or over the Everett patent or over the Badt et al. patent. Claims 3 and 4 were considered by him to be unpatentable over the Everett patent and also over the Deems patents.

The Board of Appeals seemingly approved all the grounds of rejection applied by the examiner. The view was expressed that in the construction shown in one of the figures of Deems' patent No. 1,945,480, a considerable flow of metal would likely take place apart from the mere stretching of the hollow portion of the stud. With respect to the Everett patent, the board said:

"Fig. 13 of the patent to Everett appears to be the closest to appellant's construction as in this patent the recess extends only slightly into the stud and we think it obvious that swelling of the stud must therefore be accomplished largely by a flow of metal induced by the drift pin. In the Everett patent * * * the patentee explains that expanding pressure should take place on that portion of the plug which is enclosed by the hole in the rail. The patentee warns that if the hole in the plug is not below the line of the outer edge of the rail when the pin is driven into place, the plug will tend to bulge, as indicated in dotted outline * * *. He then suggests that this condition may be a result of using a hole * * * in the plug which is not of sufficient depth; in other words, a hole which terminates short of the plug as designed in the claims on appeal.

"It seems to us that while the construction here claimed was considered undesirable by the patentee, it is nevertheless disclosed to the extent, at least, that the claims define it. We think it obvious that the appellant is not entitled to patent a previously disclosed structure merely because of the fact that the one who disclosed the same was mistaken as to its utility. If appellant's construction is useful, whereas that described in the patent was not, it must be because of some feature which is not brought out in the claims on appeal. Even in the absence of this inferential teaching in the Everett patent, it seems to us that the claims on appeal would not be patentable as we are unable to see anything more than a difference in degree between the disclosed structures and those here claimed.

The brief on behalf of appellant, in arguing the case, says:

872

"The decision of the Board of Appeals is the result of two errors in reasoning. The first of these is that the only possible difference between appellant's invention and the prior art is that in appellant's design the metal flows laterally. The Board naturally found that there was a lateral flow in the case of the prior art designs. The Board failed to see that the real distinction is that in appellant's construction solid metal is forged longitudinally from the terminal head into the stud so as to effect lateral flow of the metal of the stud without necessitating penetration of the stud by a separate tool or insert that cannot itself impart strength to the stud. In both cases the lateral flow of the metal occurs but in appellant's case the lateral flow is induced by solidly forged metal whereas in the case of the prior art constructions the lateral flow is caused by the end of the penetrating tool which not only forges but stretches the wall of the hollow stud, this causing bulging of the hollow terminal at the outside of the rail to be harmful. Solid studs have been used for over 30 years, bulging being harmless in their case because of their solid inside metal.

"The second erroneous reasoning of the Board is to the effect that since the paragraph beginning at line 49 in the first column of page 2 of the Everett patent suggests that the bulging condition is the result of using a hole in the stud which is not of sufficient depth, it of necessity follows that the hole must terminate short of the stud for the condition to exist, or, in other words, so as to produce a construction that is defined by appellant's claims. In reasoning in this manner, the Board must have entirely overlooked the immediately succeeding paragraph of the Everett patent. That is to say, the paragraph beginning with line 60 in the first column of page 2, because this shows that no bulging occurs in the case of Figure 14 when the stud is surrounded by the metal of the terminal head, it following that the bulging problem would not be encountered by the construction shown in Figure 13 if the end of the hole were within the confines of the terminal head. When carefully read, the Everett · specification shows that his problem is only involved when the end of the hole terminates somewhere between the junction of the stud and terminal head and the plane of the side of the rail head, this covering a range of positions fixed entirely by variations in the depths of the rail holes which Everett says occur in practice. That is to say, if the hole shown by Figure 13 was drilled about one-eighth of an inch shallower, then a terminal proportioned exactly as shown by Figure 13 of the Everett patent would cause the bulging to which Everett refers."

■■ While we are not convinced that the reasoning of the board is so erroneous as appellant contends, we are inclined to the view that the differences in structure, while relatively slight, may have an importance more far-reaching than the tribunals of the Patent Office seem disposed to hold. The formation of the tapered depression confined strictly to the head of the stud would seem, in the very nature of things, to bring about a different result in the matter of forcing flow of the metal when the tool is driven into such depression, from that resulting where the depression extends into the stud itself. Superficially, the difference appears to be slight, but, nevertheless, it seems to be sufficient to bring about, as appellant contends, the "enjoyment of the advantages of both the solid and hollow types of stud terminals without the normally attendant disadvantages of either." We regard this as being sufficient to justify the allowance of claims 1 and 2, wherein the depressions are definitely defined as being limited to the head portions. As to the broader claims 3 and 4, which are not so limited, we agree that their rejection upon the prior art cited was proper.

The decision of the board is modified, the same being reversed as to claims 1 and 2, and affirmed as to claims 3 and 4.